UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60794-CIV-COHN/SELTZER

BGL BNP PARIBAS, S.A.,
a Luxembourg bank,

    Plaintiff,

v.

M/Y "PURE," Maltese Official
Number 11098, her engines, tackle,
furniture, apparel, appurtenances, etc.,
*in rem*, and PURE MALTE LIMITED, a
Maltese company, *in personam*,

    Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION,
GRANTING PLAINTIFF'S MOTION TO AMEND FINAL JUDGMENT, AND
DENYING AS MOOT DEFENDANTS' MOTION FOR STAY**

**THIS CAUSE** is before the Court on Defendants M/Y Pure and Pure Malte Limited's Motion to Reconsider or Amend the Final Judgment and to Stay Action Pending Disposition of the Motion [DE 54] ("Motion for Reconsideration"), Plaintiff's Motion to Amend Final Judgment to Include Post-Judgment Interest Pursuant to Title 28 U.S.C. § 1961(a) [DE 57] ("Motion to Amend"), and Defendants' Motion to Stay Sale of the M/Y Pure [DE 59]. The Court has considered all three motions, Plaintiff's Response to the Motion for Reconsideration [DE 58], Defendants' Reply in support of the Motion for Reconsideration [DE 60], and the record in this case, and is otherwise fully advised in the premises.

## I. BACKGROUND

On August 11, 2008, Plaintiff BGL BNP Paribas, S.A., a Luxembourg bank, loaned € 6,500,000.00 to the *in personam* Defendant, Pure Malte Limited, a Maltese company. The same day, Defendant Pure Malte Limited drew upon the loan and used the full amount to buy the *in rem* Defendant, the vessel M/Y Pure. Defendant Pure Malte Limited also executed a first priority statutory mortgage to secure payment of the loan, see First Priority Statutory Mortgage [DE 1-5] ("Mortgage"), and Plaintiff recorded the Mortgage, see Certificate of Malta Registry [DE 1-1]; Transcript of Register [DE 1-6].

Under the terms of the loan, Defendant Pure Malte Limited was to repay the loan in twenty-four continual monthly payments of € 32,500.00 beginning September 15, 2008. See Plaintiff's Letter 8/1/2008 [DE 1-3]. The remaining balance of +/- € 6,500,000.00 was to be repaid in a single sum on September 15, 2010 at the latest. Id. Defendant Pure Malte Limited failed to make any payments due on or after September 15, 2010. Affidavit of Jean-Marie Janssen [DE 35-1] ("Janssen Affidavit") ¶ 14. On November 8, 2010, Plaintiff sent a notice of default, but Defendant Pure Malte Limited still failed to make any remaining payments. See id. ¶ 15; see also Notice of Default Letter 11/8/2010 and Signed Receipt 11/12/2010 [DE 35-1 at 83-86]. Plaintiff claims that as of April 11, 2011, Defendants continued to owe principal and interest in the amount of $7,456,874.89.

On April 12, 2011, Plaintiff filed this action to foreclose its preferred ship mortgage and obtain a judgment against Defendants for their default on the loan.

See Complaint [DE 1].  Pursuant to a Warrant of Arrest *In Rem* [DE 9], the M/Y Pure was arrested on April 15, 2011.  See Process Receipt and Return [DE 16].

On October 17, 2011, Plaintiff filed its Motion for Summary Judgment [DE 33] to foreclose on the preferred ship mortgage and obtain a judgment related to Defendants' default.  Defendants opposed summary judgment on the ground that the parties had entered into settlement negotiations under which real property in France would be substituted as security for the ship mortgage.  See Defendants' Response to the Motion for Summary Judgment [DE 43].  Plaintiff replied that the settlement was never finalized, and the real property was never actually substituted as security for the ship mortgage.  See Plaintiff's Reply in Support of the Motion for Summary Judgment [DE 46].  On January 9, 2012, the Court entered an Order Granting Plaintiff's Motion for Summary Judgment [DE 50], finding that the settlement agreement and the new mortgage on the French cottages were never finalized.  The same day, the Court entered a Final Judgment [DE 51] in favor of Plaintiff and against Defendants for Plaintiff's requested amount of $7,456,874.89.  Defendants never disputed the requested amount of the judgment during the summary judgment briefing.

## II.  MOTION FOR RECONSIDERATION

On January 19, 2012, Defendants filed their Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 59(e).  Under Rule 59(e), there are "three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  Ass'n For Disabled Ams., Inc. v. Amoco Oil Co., 211 F.R.D. 457, 477 (S.D. Fla. 2002).  In this case, Defendants suggest that there is a need to correct

clear error or prevent manifest injustice.

A motion for reconsideration is not intended to be a tool for relitigating what a court has already decided. Reyher v. Equitable Life Assur. Soc., 900 F. Supp. 428, 430 (M.D. Fla. 1995). Rather, it "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." Id. (internal quotations omitted). "[I]t is well-settled that motions for reconsideration are disfavored and that relief under Rule 59(e) is an extraordinary remedy to be employed sparingly." Krstic v. Princess Cruise Lines, Ltd.(Corp.), 706 F. Supp. 2d 1271, 1282 (S.D. Fla. 2010).

Defendants argue that the Court should vacate the Final Judgment because the settlement agreement was valid and binding. In the alternative, Defendants request that the Court reduce the amount of the Final Judgment to comport with the judgment day rule. As discussed below, having reviewed all of the evidence submitted, the Court concludes that there are no disputed issues of fact, and Defendants' request to vacate the judgment and amend the final judgment amount must be denied.

## A. Reconsideration of the Final Judgment

First, Defendants argue that the Court must reconsider and vacate the Final Judgment because there is disputed evidence as to whether the settlement agreement between the parties was valid and binding under Luxembourg law.[1] See Mot. for Reconsideration at 3. Defendants highlight that Plaintiff "knew [Defendant] Pure Malte

---

[1] The Court notes that Plaintiff contends that this case is not governed solely by Luxembourg law, but rather by U.S. law as well as Luxembourg and Maltese law. See Resp. at 11.

4

signed the settlement protocol," id., because an exhibit produced at the deposition of Bob Kieffer, in-house counsel for Plaintiff, showed Pure Malte's signature, id. at 4. Defendants attach to their Motion for Reconsideration a copy of the exhibit showing Geraldine Shembri and Adrian Said's signatures above "Pure Malte Ltd." See Exhibit 1 to Motion for Reconsideration [DE 54-1] at 6.  However, the Order Granting Plaintiff's Motion for Summary Judgment noted that the settlement agreement Defendants submitted during the summary briefing judgment lacked both a signature by Defendant Pure Malte and a signature by Plaintiff.  See Order Granting Summary Judgment at 5; see also Draft Settlement Agreement [DE 43-1] (submitted with Defendants' Response to the Motion for Summary Judgment).  Defendants offer no explanation for their failure to include Defendant Pure Malte's signature page during the summary judgment briefing, and this is not the time to submit evidence that Defendants could have submitted, but neglected to do so.  See  Reyher, 900 F. Supp. at 430.

Regardless, there is no dispute that Plaintiff never signed the settlement agreement and the parties never executed a new mortgage on the French real property. Therefore, the Court is still not satisfied that the settlement agreement was ever finalized or that the real property was substituted as the security for the ship mortgage. As Plaintiff notes, "At the heart of Defendants' settlement argument is the fourth mortgage on the two cottages and they never provided this mortgage to the Bank.  As a direct result, the Bank never released its preferred ship's mortgage against the M/Y Pure."  Resp. at 2.

Second, Defendants argue that regardless of whether the settlement agreement was signed by all parties, "the 'credit facility,' which incorporated the settlement

5

protocol, was signed by Eric Arnoux and Savana Investment S.A., who accepted the terms of the Bank's offer, thereby giving rise to a valid agreement." Mot. for Reconsideration at 3; Credit Facility [DE 43-1 at 17-27]. Plaintiff responds that the Credit Facility did not constitute a valid and binding settlement agreement because it "contained several important items of consideration that were required from the Defendants and their principal owner, Eric Arnoux, to complete the deal." Resp. at 5. In addition to the mortgage on the French cottages, Defendants were required to provide Plaintiff with the following:

> (a) an agreement that pledged the shares or stock certificates in Savana, S.A. to the Bank as security for a new loan . . . ; (b) delivery of the Savana stock certificates or shares to the Bank so the Bank had possession of them and could immediately use them as the new shareholder in the event Savana defaulted on a new loan; (c) an endorsement letter from the insurer of the two cottages showing the Bank as an additional insured and that the Bank was entitled to payment of insurance money in the event of a loss involving the cottages; (d) a new guaranty signed by Eric Arnoux and acknowledged by his wife to secure a new loan; and (e) the Defendants' payment of the outstanding loan balance as well as the Bank's litigation expenses.

Resp. at 5; see also Pierre Hurt's Affidavit on Luxembourg Law as to Conditional Contracts [DE 43-2] ("Hurt Affidavit") at 4 (describing these conditions). As of the date that Plaintiff filed its Response to the Motion for Reconsideration, Defendants still had not provided Plaintiff with any of these items. See Resp. at 7.

The Hurt Affidavit opines that the non-performance of this contract has no effect on its validity under Luxembourg law, see Hurt Affidavit at 6, however Plaintiff's in-house counsel, Bob Kieffer, interprets the conditions to be binding conditions precedent under the applicable law, and states, "Only after **all** these conditions precedent were completed . . . would the Bank release the preferred ship's mortgage on the vessel,"

Affidavit of Bob Kieffer in Support of BGL BNP Paribas, S.A.'s Motion for Summary Judgment [DE 47] ("Kieffer Affidavit") ¶ 7.[2]  The plain language of the Credit Facility supports Mr. Kieffer's interpretation:

> The current credit will be released <u>as soon as your abovementioned accounts will have been opened</u> in our books following the commercial uses and conforming to the legal provisions in place, as well as <u>after the accomplishment of the prior conditions following</u>:
>
> - signature in due form and by all parties of an agreement protocol to be established by the bank and full performance of all conditions and resumption, notably the reimbursement of debtors accounts, of interests and all eventual fees in the account of Pure Malte Ltd., La Valetta, and in the account of Eurosofi S.A., Luxemburg, in our books . . .
>
> - signature in good and due form and by all the parties of the current credit agreement and guarantee contracts in part.
>
> - the guarantee as the final economic beneficiary of Pure Malte Ltd and of Eurosofi S.A. commits the net profit of future sales of the "Pure" yacht and/or the property retained by Eurosofi S.A. in Sofia Antipolis respectively any amount resulting from an eventual refinancing of the "Pure" yacht and/or the property retained by Eurosofi S.A. will be used in the first place for the reimbursement/reduction of our commitment

---

[2]   Defendants attempt to discredit Mr. Kieffer by arguing that he is not licensed to practice Luxembourg law and is not an expert on Luxembourg law, yet his affidavit describes his credentials as follows:

> I am holding a Master's degree in private law, as well as a PhD in international law from the University of Strasbourg, both of which have been duly homologized in Luxembourg.  I am practicing law as a legal counsel in the Luxembourg financial sector since 2006.  I am also a "chargé de cours associé" (invited lecturer) with the Faculty of Law of the University of Luxembourg, as well as a member of the "Association luxembourgoise des juristes de droit bancaire" (Luxembourg association of bank lawyers) since 2007.  Part of my job consists of assisting with foreclosures of the Bank's security interests on properties securing defaulted loans.

Kieffer Affidavit ¶ 2.  The Court finds that these credentials and experience qualify Mr. Kieffer to offer his opinion on the legal matters at issue here.

>            to SAVANA S.A.
> -    the written undertaking to sell the property in Demi Quartier, countersigned by Savanna Investment S.A. and its final economic beneficiary
>
> -    transfer to the bank of all requested guarantees

Credit Facility (emphasis added). Thus, the Credit Facility itself requires that all parties sign the settlement agreement and perform all conditions before the funds are paid. See id.[3] As such, the non-performance of the conditions, including the failure to obtain all parties' signatures on the settlement agreement were fatal to finalizing the purported settlement agreement.

As Mr. Kieffer notes, "In economic terms, while this proposed deal would not

---

[3] The Hurt Affidavit suggests that none of the conditions in the Credit Facility was limited in time, but neither Mr. Hurt nor the Court could have expected Plaintiff to wait an endless amount of time for Defendants to fulfill these conditions. Of course, when "one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to'—then that promise may be characterized as an 'illusory' promise, i.e., 'a promise in form not in substance.' " Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1311 (11th Cir. 1998). "An illusory promise does not constitute consideration for the other promise, and thus the contract is unenforceable against either party." Id.

The eight months that have passed since the parties attempted to settle this matter has been sufficient time to finalize the documents. This is especially true in light of the fact that this case was pending all along, and the parties were well aware of the upcoming deadlines.

Further, Plaintiff suggests that "as of November 22, 2011 a mortgage could not be placed on the two cottages in favor of the Bank because Savana had contracted to sell the cottages to an undisclosed third party at that time. Savana was therefore not able to give the Bank a fourth mortgage on the two cottages for a period of time due to this contract, which effectively prevented this condition from being fulfilled." Resp. at 7. Defendants object to this suggestion in their Reply, see Reply at 3, on the basis that Plaintiff failed to submit any evidence in support, however, Defendants also failed to submit any evidence refuting this assertion. Regardless, as mentioned above, a sufficient amount of time has passed without Defendants fulfilling the required conditions to form a binding settlement.

have reduced the Bank's credit exposure with regard to the companies related to Mr Arnoux, it was nevertheless acceptable, as it allowed, amongst other things, to replace the preferred ship's mortgage on the vessel by a mortgage on a much more valuable (and less mobile) asset – the chalet in the French Alps." Kieffer Affidavit ¶ 8. "Also, it would put an end to the litigation between the parties and the Bank would be reimbursed for all of its litigation expenses, including attorneys' fees and *custodia legis* expenses." Id. However, Plaintiff never signed the settlement agreement "because the Defendants had not fulfilled the conditions precedent under the proposed agreement." Id. ¶ 10.

Importantly, the Court notes that if the parties had indeed settled this action, they were required to file a Notice of Settlement. See Local Rule 16.2(f); see also Order Requiring Mediation [DE21] at 2-3. Not only did both parties fail to file a Notice of Settlement, but the Mediation Report [DE 42] filed on November 23, 2011, over five months after the purported settlement negotiations, indicates that the parties had reached an impasse. Neither party ever filed a motion to stay this case pending the execution of the settlement agreement, Plaintiff never voluntarily dismissed this case pending the settlement agreement, and Defendants never otherwise requested any action relating to the settlement agreement prior to the summary judgment briefing. In the eight months that have passed since Defendants purportedly agreed to the terms in the proposed settlement agreement, they still have not fulfilled any of the conditions in that agreement. Accordingly, based on the evidence submitted and in light of the applicable law, the Court concludes that there is still no finalized binding settlement agreement substituting the French real property for the vessel as security for the ship mortgage. Therefore, Defendants' request to vacate the Final Judgment will be denied.

## B. Request to Reduce the Amount of the Judgment

Alternatively, Defendants request that the Court modify the Final Judgment to reflect the exchange rate as of the date of the Final Judgment rather than the date before the action was filed. Plaintiff's Complaint alleged that Defendants owed $7,456,874.89 as of April 11, 2011, the day before this action was filed. See Compl. ¶ 23. Plaintiff explains that this amount "was determined by converting the principal and interest owed in euros as of April 11, 2011 to U.S. dollars using the standard foreign currency exchange rate for that day." Resp. at 10. In the Motion for Summary Judgment and Reply in support of that motion, Plaintiff once again requested $7,456,874.89. Mot. for SJ at 1, 7; see also Reply in Support of the Motion for Summary Judgment [DE 46] at 3. Defendants did not object to the amount sought despite their opportunity to raise this objection in their Response to the Motion for Summary Judgment. See Resp. to Mot for SJ.

A litigant cannot use a Rule 59(e) motion to raise arguments that could have been raised prior to the entry of judgment. Stone v. Wall, 135 F.3d 1438, 1442 (11th Cir. 1998) ("The purpose of a Rule 59(e) motion is not to raise an argument that was previously available, but not pressed."); see also Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005) (plaintiff "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"). Thus, Plaintiff's objection to the calculation of the exchange rate fails because it comes too late.

### III. MOTION TO AMEND

On February 5, 2012, Plaintiff filed its Motion to Amend the Final Judgment to include post-judgment interest from the date of the judgment pursuant to 28 U.S.C. § 1961(a), and to add the phrase "for which let execution issue." Mot. to Amend at 1. Defendants agree that the Final Judgment must contain the phrase, "for which let execution issue," see Mot. to Stay at 2, and the Court finds that § 1961(a) entitles Plaintiff to post-judgment interest. Therefore, Plaintiff's request will be granted.

### IV. MOTION TO STAY

Finally, in their Motion for Reconsideration and in their Motion to Stay, Defendants request that the Court stay the upcoming sale of the M/Y Pure pending the resolution of the post-judgment motions. As all issues in the post-judgment motions have now been resolved, the request to stay is moot. The sale scheduled for February 17, 2012 shall go forward as planned.

### V. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants M/Y Pure and Pure Malte Limited's Motion to Reconsider or Amend the Final Judgment and to Stay Action Pending Disposition of the Motion [DE 54] is **DENIED**;

2. Plaintiff's Motion to Amend Final Judgment to Include Post-Judgment Interest Pursuant to Title 28 U.S.C. § 1961(a) [DE 57] is **GRANTED**, and the Court will enter a separate Amended Final Judgment consistent with this ruling;

3. Defendants M/Y Pure and Pure Malte Limited's Motion to Stay Sale of the M/Y Pure [DE 59] and the request to stay contained in Defendants' Motion to Reconsider or Amend the Final Judgment and to Stay Action Pending Disposition of the Motion [DE 54] are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 16th day of February, 2012.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF